IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KAUAI BEACH VILLAS-PHASE II,  )    CIVIL 12-00483 LEK-RLP
LLC,                          )
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
COUNTY OF KAUAI, KAUAI COUNTY )
COUNCIL, KAUAI PLANNING       )
DEPARTMENT AND DOE DEFENDANTS )
1-20,                         )
                              )
          Defendants.         )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND III OF THE
COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS'
COUNTER MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND III**

On March 1, 2013, Plaintiff Kauai Beach Villas - Phase

II, LLC ("KBV") filed the instant Motion for Summary Judgment on

Counts II and III of the Complaint ("KBV Motion") and its Concise

Statement of Material Facts in support of the KBV Motion ("KBV

CSOF").  [Dkt. nos. 15, 16.]  On May 6, 2013, Defendants County

of Kaua`i ("the County"), Kaua`i County Council ("the Council"),

and Kaua`i Planning Department ("the Planning Department", all

collectively "Defendants") filed their Counter Motion for Summary

Judgment on Counts II and III ("Counter Motion") and their

Concise Statement of Facts ("Defendants' CSOF").  [Dkt. nos. 18,

19.]  KBV filed a joint reply in support of the KBV Motion and

opposition to the Counter Motion ("Reply") on May 14, 2013.

[Dkt. no. 23.]  Defendants filed a reply in support of the Counter Motion ("Counter Reply") on May 21, 2013.  [Dkt. no. 24.] These matters came on for hearing on May 28, 2013.  Appearing on behalf of KBV was Gregory Markham, Esq., and appearing on behalf of Defendants was Ian Jung, Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the KBV Motion and Defendants' Counter Motion are HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

KBV filed the instant action on August 12, 2012 to challenge: 1) a 2008 amendment to the County of Kaua`i Charter ("the Charter" or "the County Charter") that was codified as Section 3.19; and 2) a 2011 ordinance adopted to implement Section 3.19 ("Ordinance No. 912").  Section 3.19 provides:[1]

Implementation of the General Plan

A.   The power to process and to issue any zoning, use, subdivision, or variance permit for more than one transient accommodation unit shall be vested in and exercisable exclusively by the council.  As used in this Section, **"transient accommodation unit" shall mean an accommodation unit or a portion thereof in a hotel, timeshare facility, resort condominium, fractional ownership facility, vacation rental unit or other similarly-**

_____

[1] The Charter is available to the public through the County of Kaua`i website: http://www.kauai.gov/Government/ PublicDocuments/tabid/362/Default.aspx.  KBV provided relevant sections of the Charter with its KBV CSOF as Exhibit C to the Declaration of Gregory K. Markham ("Markham Declaration").

**used dwelling that is rented or used by one or more persons for whom such accommodation unit is not the person's primary residence under the Internal Revenue Code.**

B.   Any applicant seeking the issuance of a zoning, use, subdivision or variance permit for more than one accommodation unit shall certify to the planning department whether any use of the units as a transient accommodation unit is projected by the applicant.  **Prior to granting any such permit for a transient accommodation unit, the council shall conduct a public hearing and make a finding that granting such permit would be consistent with the planning growth range of the general plan and in the best interest of the county and its people.**  Approval of any such application shall require a favorable vote of two thirds (2/3) of the entire membership of the council.  Appeals of any decision by the council relating to such permits must be instituted in the circuit court within thirty (30) days after entrance of the final decision of the council.

C.   The council may by ordinance authorize the planning commission to process and issue such permits, or certain of them, on terms and conditions as the council may deem advisable, only upon the council's enactment of a rate of growth ordinance that limits the rate of increase in the number of transient accommodation units in the county to no greater than one-and-one-half percent (1.5%) per annum on a multi-year average basis, or such growth rate that is within the planning growth range of a future general plan adopted pursuant to Section 14.08.

D.   The council shall adopt such ordinances, laws, rules and regulations as are necessary to carry out the terms and intent of this amendment to the Charter.

E.   If any provision of this amendment shall be held by a final order of a court of competent jurisdiction to be invalid, all of the other terms of the amendment shall remain in full force and effect.  (Amended 2008)

3

(Emphases added.)

KBV owns real property on the Hanamā`ulu coast on the island of Kaua`i ("the Property").  The Kaua`i General Plan ("the General Plan") designates the Property for resort development, and this designation has been consistent since 1977.  A portion of the Property is located in an urban land use district.  [KBV CSOF Nos. 5-7.]  Appendix C to the General Plan states that the Property is planned for resort use and is proposed for resort zoning with an allowable density of 680 multi-family units or 1,360 hotel units.  [KBV CSOF No. 8.]

In 2008, a group called the Coalition for Responsible Government ("CRG") drafted and circulated a Petition proposing to amend the Charter to designate various uses of land under the term "transient accommodation unit" ("TAU") and to establish various requirements for applicants seeking permits for more than one TAU ("the Proposed Amendment").[2]  The Proposed Amendment was presented to the voters on the 2008 general election ballot, and the County also made the "2008 Charter Amendment Proposals: Ballot Questions, Proposed Text Amendments, & Pros/Cons" ("Election Guide") available to voters.[3]  [KBV CSOF Nos. 9-10,

---

[2] The Petition alleged that the County's average daily visitor count was growing too rapidly and that an excessive number of visitors negatively impacted the residents of the County.  [Markham Decl., Exh. B (Petition) at 2.]

[3] The Election Guide for the Proposed Amendment is attached
(continued...)

12.]   The Proposed Amendment was adopted in the 2008 general election and codified as Section 3.19.  Section 3.19 is substantively identical to the amendment suggested in CRG's Petition.  [KBV CSOF Nos. 14, 15; Defs.' CSOF, pg. 2, No. 14.]

Subsequently, the Council adopted Ordinance No. 912, the purpose of which was "to authorize the Planning Commission of the County of Kaua`i to process and issue zoning permits, use permits, subdivision approvals, and various permits for" TAUs pursuant to Section 3.19.  [Markham Decl., Exh. J (Ordinance No. 912).]  Ordinance No. 912 also establishes the growth rate.  [KBV CSOF No. 19.]

In its Complaint, KBV states that it and its predecessors have spent substantial sums to "develop visitor accommodation units on the [P]roperty as part of a larger resort project."  [Complaint at ¶ 3.]  KBV alleges that the purpose of Section 3.19 - to enforce a "planning growth range" for visitor accommodation units - is inconsistent with the General Plan, which never intended to limit the number of visitor accommodation units.  According to KBV, the Planning Department has acknowledged this inconsistency.  The County, however, failed to explain this inconsistency to the public when it placed the Proposed Amendment on the ballot, and the County inaccurately

---

[3](...continued)
to the KBV CSOF as Exhibit D to the Markham Declaration.

described the amendment as implementing the General Plan.  [Id. at ¶¶ 4-6, 8.]  KBV argues that Section 3.19 has a disproportionate effect on visitors to Kaua`i and on part-time residents of Kaua`i because it will substantially reduce the number of units available to them and make the available units substantially more expensive.  [Id. at ¶ 10.]

Ordinance No. 912 creates various exemptions to the TAU limit, but KBV's Property is not exempt.  Between January 1, 2012 and December 31, 2016, the County may only approve 252 new, non-exempt TAUs.  [Id. at ¶¶ 13-15.]  KBV argues that, even if it constructed all 252 new units, that number "is substantially less than the number of visitor accommodation units planned for the [P]roperty in the general plan and would be insufficient to support the development of the [P]roperty as part of the larger resort project."  [Id. at ¶ 16.]  Thus, KBV contends that Section 3.19 and Ordinance No. 912 prevent KBV from developing its Property as contemplated by the General Plan, and this has a substantial negative impact on the value and use of the Property.  [Id. at ¶¶ 17-18, 20.]

KBV argues that Defendants have not advanced a legitimate state interest in these actions, and therefore Section 3.19 and Ordinance No. 912 violate the Fourteenth Amendment.  [Id. at ¶¶ 20-21.]  The Complaint also alleges that Section 3.19 and Ordinance No. 912 violate state law because the County did

not follow the proper procedures in enacting them and because the County failed to properly describe the Proposed Amendment in the voter education materials.  [Id. at ¶¶ 22-23.]

The Complaint states that, on April 26, 2012, KBV applied to the Planning Department Director for a 400-unit exemption on the Property from the TAU cap and certification process.  The Director denied the application, and KBV has appealed.  KBV argues that the appeal is futile and that this Court should immediately decide KBV's facial challenges to Section 3.19 and Ordinance No. 912 without regard to the outcome of the appeal.  [Id. at ¶¶ 100-03.]  The Complaint alleges that Section 3.19 and Ordinance No. 912 have injured KBV because they interfere with its reasonable investment expectations for the Property.  KBV seeks declaratory relief that will end the controversy giving rise to this case.  [Id. at ¶¶ 105-13.]

The Complaint alleges the following claims: a 42 U.S.C. § 1983 claim for denial of substantive due process ("Count I"); violation of Haw. Rev. Stat. § 46-4, the Zoning Enabling Act ("Count II"); and violation of Charter § 22.07.D. ("Count III"). The Complaint seeks the following relief: a declaratory judgment that Section 3.19 and Ordinance No. 912 are unconstitutional and invalid on their face; an injunction against the enforcement of Section 3.19 and Ordinance No. 912; fees and costs; and any other appropriate relief.

7

## II.  __KBV Motion__

The KBV Motion seeks summary judgment on Count II and Count III.  The KBV Motion does not address Count I.  [Mem. in Supp. of KBV Motion at 3-4 & n.2.]

KBV emphasizes that counties may only exercise the powers that the State legislature has designated to them. Further, the State legislature may enact laws regarding matters of statewide concern, even if they are in an area that is typically reserved to the counties.  In matters of statewide concern, such as land use, state statutes override contrary county charters and ordinances.  [__Id.__ at 5-6 (some citations omitted) (citing Haw. Const. art. VIII, § 6).]

Within the framework of the four zoning districts (urban, rural, agricultural, and conservation) established by the State Land Use Commission, the Zoning Enabling Act (Haw. Rev. Stat. § 46-4) gives the counties certain zoning powers.  [__Id.__ at 6 (some citations omitted) (citing Haw. Rev. Stat. § 205-2(a)).] KBV emphasizes that a county must exercise its zoning power by ordinance and within the framework of a comprehensive general plan.  Properly executed, the County may exercise its zoning power as to the subject matter of Section 3.19 and Ordinance No. 912, but regulations that do not comply with § 46-4 are void. [__Id.__ at 7-9.]

The County's General Plan states that "[t]he visitor industry is the most significant economic force on Kaua`i" and "the number of visitors staying on Kaua`i is the single most important variable in the economy."  [General Plan §§ 4.2.1, 4.2.2.2.]  Appendix C to the General Plan includes an inventory of planned and proposed resort hotel and condominium projects. The General Plan recognizes that the visitor industry will grow, requiring improvements to infrastructure and public facilities. [Id. § 1.6.2.3.]  As part of the 2000 update to the General Plan, the Planning Department developed a forecast of the number of anticipated visitors per day in 2020.  The projection for 2020 was between 24,000 and 28,000 visitors per day.  The purpose of the forecast was to assist in the long-range planning of County infrastructure and services.  The General Plan states that the forecast is not intended to be either a target or a growth limit, and the forecast should be revisited either when new information is available or every five years.  [Id. §§ 1.6.2.1, 1.6.2.4.] The General Plan also recognizes that visitor growth is subject to many variables, including the number and quality of available visitor units.  [Id. § 4.2.2.1.]

KBV points out that the Election Guide and the ballot question characterized the Proposed Amendment as an "implementation" of the General Plan and stated that it would limit TAUs to amounts consistent with the projections in the

current and future General Plans.  Further, it would prevent the Planning Commission from approving more TAUs than projected in the General Plans.  [Mem. in Supp. of KBV Motion at 14 (citing Exh. D (Election Guide[4]) at 10, 12).]  KBV emphasizes that the Planning Department has admitted that Section 3.19 is inconsistent with the General Plan and that the projections in the General Plan are not targets or limits.  [Id. at 15-16 (citing Exh. E (2/8/11 Staff Report[5]) at 3, 4).]  The Planning Department also recognized that "[a] growth rate cap of 1.5% that is based on the findings of a visitor unit demand study conducted in 1998 does not account for recent and substantial growth in the visitor unit inventory over the past decade."  [2/8/11 Staff Report at 5.]  KBV emphasizes that the Election Guide did not include this information.  [Mem. in Supp. of KBV Motion at 16.]

KBV states that Ordinance No. 912 authorizes the Planning Commission to process and issue subdivision approvals and various types of permits for TAUs pursuant to the terms of Section 3.19.  Ordinance No. 912 limits the Planning Commission to the issuance of 252 TAU certificates between January 1, 2012

---

[4] Exhibit D to the Markham Declaration consists of excerpts from the Election Guide.  [Markham Decl. at ¶ 5.]  KBV did not provide a copy of the election ballot, but Defendants did.  See infra n.9.

[5] Exhibit E to the Markham Declaration is a County Planning Department Staff Report for a February 8, 2011 hearing regarding proposed zoning amendments to Kaua`i County Code, Chapter 8, to implement Section 3.19.  [2/8/11 Staff Report at 1.]

and December 31, 2016.  [Id. at 16-17 (citing Exh. K (2/28/12 Commission Meeting Minutes) at 5).]   The Planning Department has also admitted that the limits in Ordinance No. 912 are not consistent with the General Plan.  [Markham Decl., Exh. L (5/24/11 Suppl. #2 to Staff Report) at 3.]

KBV argues that Section 3.19 is invalid because: the counties' § 46-4 powers cannot be exercised by initiative; the counties' § 46-4 powers may only be exercised by ordinance; and Section 3.19 is a land use regulation that could only be exercised through the County's § 46-4 powers.  Section 3.19 therefore exceeds the powers that the State of Hawai`i granted to the County, and therefore Section 3.19 is invalid on its face. [Mem. in Supp. of KBV Motion at 18.]

The seminal case invalidating county land use voter initiatives is Kaiser Hawaii Kai Development Co. v. City & County of Honolulu, 70 Haw. 480, 777 P.2d 244 (1989).  [Id. at 18-21.] KBV emphasizes that, as recognized in Kaiser Hawaii Kai, "initiatives cannot take into account the myriad of different and often competing values and technical considerations that are developed, vetted and balanced through long-range, comprehensive planning" and such "'[s]poradic attacks'" allow voters to make single zoning decisions "'without any overriding concept[.]'" [Id. at 28-29 (quoting Kaiser Hawaii Kai, 777 P.2d at 247).]

11

KBV argues that a county charter is distinct from county ordinances, and therefore charter amendments cannot serve as legislation in place of ordinances.  [Id. at 21-22.] Moreover, § 46-4 expressly states that the counties shall exercise their land use powers "by ordinance", and § 14.10 of the County Charter states that the County Council shall enact "zoning ordinances".  [Id. at 23.]

KBV points out that Section 3.19 creates and regulates a new land use classification, the TAU.  According to KBV, no other section in the County Charter creates and regulates a specific land use, imposes specific requirements for a land use, or limits the growth of a specific land use to a range expressed in the General Plan.  KBV also emphasizes that Section 3.19 does not apply to any other types of land use; it only applies to the newly created TAU classification.  Thus, KBV argues that Section 3.19 is a land use regulation which exercises zoning powers set forth in § 46-4, and which is akin to County ordinances governing "transient vacation rentals", "visitor destination areas", or timeshare units.  Since § 46-4 addresses matters of statewide concern, it is superior to Section 3.19, and § 46-4 must control. [Id. at 25, 27-28.]

KBV also argues that a ballot question must be clear and cannot mislead or advocate a position.  Further, the Charter requires that a ballot for a measure proposed by initiative must

12

have an objective summary of the measure.  [Id. at 29 (citing

Exh. C (Charter) § 22.07.D.).]  KBV argues that, in the instant

case, the Election Guide did not include an objective summary of

the Proposed Amendment and misleadingly stated that the amendment

would implement the General Plan and would restore visitor growth

to levels required by the General Plan.  [Id. at 33.]

The Election Guide states, in pertinent part:

**RELATING TO IMPLEMENTATION OF THE GENERAL PLAN**
(Proposed by Citizens' Petition)

**BALLOT QUESTION**

"Shall Article III of the Charter of the County of
Kauai be amended by adding new sections to read as
follows:

SECTION 1

Article III of the Charter of the County of Kauai
is hereby amended by adding a new Section to
Article III to read as follows:

Implementation of the General Plan
. . . .

**BACKGROUND**

. . . [T]he County Charter does not require the
number of "transient accommodation units" as
defined in the proposed Charter amendment approved
by the County be consistent with the General
Plan's growth scenarios.

**EXPLANATION OF PROPOSED AMENDMENT**

. . . .

. . . The annual number of "transient
accommodation unit" approvals allowed would be
limited to a number calculated from the year 2020
projections of overall demand for visitor units

13

> contained in the 2000 General Plan, or within the growth ranges of future General Plans that are adopted by the County Council.
>
> . . . .
>
> **PROS AND CONS**
>
> *Pros:*
>
> . . . .
>
> • Removes the ability of the Planning Commission, a body whose members are appointed by the Mayor and confirmed by the County Council, to approve more "transient accommodation units" (as defined in the proposed Charter amendment) than would be consistent with the projections in present and future General Plans.
>
> • The approval rate over the past 8 years for hotels, timeshares and other transient accommodations has been far greater than the projections in the 2000 General Plan. Requiring that growth be paced consistently with General Plan growth scenarios could help to ensure that such growth is consistent with Kauai's infrastructure, housing stock, employment needs and desired character.

[Markham Decl., Exh. D at 10-12.]

KBV argues that the Election Guide failed to provide a non-partisan, objective summary of the Proposed Amendment, in particular because it failed to inform voters that: 1) the projections in the General Plan are not targets or growth limits; 2) the projections are subject to periodic revision; and 3) the Proposed Amendment is inconsistent with the General Plan's policy of visitor unit growth and resort growth.  Further, the Election Guide does not state that the primary effect of the Proposed

Amendment would be to restrict the development of TAUs in a matter that the General Plan did not intend.  According to KBV, the Election Guide misled voters into believing that the Proposed Amendment would be in conformity with the General Plan.  KBV therefore argues that Section 3.19 is also void on its face because it violates County Charter § 22.07.D.  [Mem. in Supp. of KBV Motion at 34-36.]

        KBV therefore urges this Court to grant KBV summary judgment on Count II and Count III.

## III. **Counter Motion**

        In the Counter Motion, Defendants assert that "the nature of this case fundamentally centers on a shift of authority."  [Mem. in Supp. of Counter Motion at 3.]  Section 3.19 shifts the authority to issue permits for TAUs from the Planning Commission to the Council.  [Id.]

        On September 3, 2008, CRG, the group that initiated the Petition, submitted proposed language for the Election Guide's description of the Proposed Amendment.  [Defs.' CSOF No. 3; Counter Motion, Decl. of Counsel ("Defs.' Counsel Decl."), Exh. 3 (letter to County Clerk from CRG).[6]]  The Office of the County Clerk responded that CRG's proposed ballot question did not accurately represent the text of the Proposed Amendment and that

---

        [6] Defendants submitted their exhibits with their Counter Motion instead of with Defendants' CSOF.

proposed voter education materials were solely in the County

Clerk's discretion.  [Defs.' CSOF No. 4; Defs.' Counsel Decl.,

Exh. 4 (letter dated 9/3/08 to CRG from the Office of the County

Clerk).]

On September 5, 2008, the County Clerk submitted the

ballot question for the Proposed Amendment to the Chief Elections

Official.  The County Clerk did not use CRG's proposal.  [Defs.'

CSOF No. 5; Defs.' Counsel Decl., Exh. 5 (9/5/08 letter).]

Defendants assert that the County Clerk modified the ballot

question to be objective and to include the entire text of the

Proposed Amendment.  [Mem. in Supp. of Counter Motion at 5.]  CRG

sent a letter to the County Clerk insisting upon the use of its

ballot question and threatening legal action.  [Defs.' CSOF No.

6; Defs.' Counsel Decl., Exh. 6 (9/9/08 letter).]  The ballots

were ultimately printed using the County Clerk's September 5,

2008 submission.  [Defs.' CSOF No. 7; Defs.' Counsel Decl., Exh.

7 (11/4/08 General Election ballot).[7]]  On October 2, 2008, CRG

---

[7] The General Election ballot states, in pertinent part:

**Kauai: Relating to the Implementation of the
General Plan**

"Shall Article III of the Charter of the County of
Kauai be amended by adding new sections to read as
follows:

[full text of Proposed Amendment]

[Defs.' Counsel Decl., Exh. 7 at 1 (emphasis in original).]

submitted information to the County Clerk to be included in the voter education material.  [Defs.' CSOF No. 8; Defs.' Counsel Decl., Exh. 8 (10/2/08 e-mail with attachment).]

Section 3.19 vests the power over TAU permits in the Council, except that the Council would return power over the process to the Planning Commission upon the enactment of an ordinance establishing a growth rate for TAUs that was within the General Plan's growth range.  The Council elected that option and enacted Ordinance No. 912, which took effect on November 21, 2011.  It established an allocation program for TAU Certificates ("TAUC").  Where a project involves more than one TAU, the development and use of the TAUs require a TAUC as a prerequisite to obtaining a permit or a subdivision approval.  Ordinance No. 912 also establishes a growth rate for TAUs over a five-year period.  The first five-year Allocation Cycle began on January 1, 2012.  [Mem. in Supp. of Counter Motion at 6-7.]

Defendants describe the allocation process set forth in Kaua`i County Code, Chapter 8, Comprehensive Zoning Ordinance ("CZO") § 8-28.3 and Ordinance No. 912, and they agree with KBV that 252 TAUCs are available for Allocation Cycle #1, which runs from January 1, 2012 to December 31, 2016.  [Id. at 8-9 (some citations omitted) (citing Defs.' Counsel Decl., Exh. 11 (County Planning Department Director's Report for 2/28/12 hearing regarding the Transient Accommodation Unit Certificate Allocation

Program)).]  The Planning Commission accepts applications for TAUCs in chronological order.  A TAUC application must be submitted with a complete application for the permit or subdivision approval sought for the project.  Any available TAUCs not issued by December 16, 2016 will expire.  The Planning Commission has not received any applications for TAUCs, nor has it issued any.  [Id. at 9 (citing Markham Decl., Exh. J).]

Defendants emphasize that there are two types of exemptions to the TAUC requirement, one for a "Permitted Project" and one for a "Eligible Resort Project".  They also emphasize that, pursuant to CZO § 8-24.4(c), there is an anti-moratorium provision that will take effect if all TAUCs are allocated in any five-year cycle.  [Id. at 9-10.]

As to KBV, Defendants acknowledge that the Property has a State Land Use District "urban" classification with a Kaua`i County General Plan "resort" designation.  Defendants, however, state that, pursuant to County ordinance, the Property is within the "County Agriculture and Open Districts", not the "Visitor Destination Area".  [Id. at 10 (citing Defs.' Counsel Decl., Exh. 12 (maps fo Kauai Beach Villas - Phase II Zoning Districts and General Plan Designation)).]  Defendants point out that representatives of KBV attended Council meetings during the debate about the TAU legislation, and they submitted testimony in strong support of the precursor bill to Ordinance No. 912.  The

testimony also argued in favor allowing projects with the General

Plan "Resort" designation to qualify for an exemption.  [Id. at

10-11 (citing Defs.' Counsel Decl., Exh. 13 (testimony dated

9/28/11 to the Council by Lynn McCrory, President of PAHIO

Development, Inc., regarding Bill No. 2410 Relating to the

Permitting Process for Transient Accommodation Units)).]  The

Council ultimately decided to limit the exemptions to projects

that were already zoned for resort use and that had expended

substantial sums.  [Id. at 11.]

Defendants first argue that this Court should stay the

litigation of Count II and Count III pursuant to the abstention

doctrine set forth in Railroad Commission of Texas v. Pullman

Co., 312 U.S. 496 (1941).  Although abstention is the exception

rather than the rule, federal courts have often invoked the

Pullman abstention doctrine to refrain from adjudicating § 1983

claims regarding land use issues.  [Id. at 11-12 (citing Colorado

River Water Conserv. Dist. v. United States, 424 U.S. 800, 813

(1976)).]

Defendants argue that KBV is attempting to improperly

expand the holding in Kaiser Hawaii Kai and that there are two

unresolved issues of state law in this case.  [Id. at 13-14.]

Defendants characterize those issues as follows:

•"[O]nce the state legislature delegates certain zoning power to
  specific agencies within the county government may a
  citizens' petition then reallocate the power to zone to a
  different authority within the county[?]"

•"[W]hether the Council, as a legislative body, can utilize TAU growth projections (i.e. 'Projections to 2020') in the General Plan that were not necessarily intended to be 'targets' or 'limits', but to guide enactment of a slow growth ordinance to supersede the General Plan ordinance and implement the 'Projections to 2020' as contemplated in the General Plan[?]"

[Id. at 14.]  Defendants ask this Court to stay the case until KBV resolves these issues in the proper state forum.  After the state forum decides these issues, this Court will be able to determine whether the federal question in Count I has been narrowed or become moot.  [Id.]

Defendants argue that staying the case under the Pullman abstention doctrine will not prejudice KBV because, during the pendency of the litigation, KBV can begin the process of applying for re-zoning of the Property.  If re-zoning is granted, KBV can apply for a TAUC under Ordinance No. 912 or, if all of the permits for the current five-year cycle become accounted for, KBV can petition for an allocation under CZO § 8-24.4(c).  [Id. at 14-15.]

Defendants next argue that this Court should not rule upon Count II and Count III until it rules upon Count I, the lone federal claim.  Defendants argue that Count I is a weak claim because of KBV's failure to exhaust state administrative remedies.  Defendants emphasize that KBV has not been denied development rights based on the process established in Section 3.19 and Ordinance No. 912, and Defendants argue that KBV cannot

20

meet the "shock the conscience" standard which would excuse KBV's failure to go through the contested process before challenging it.  [Id. at 15-18.]

Moreover, KBV and Defendants are engaged in litigation before the Planning Commission's hearings officer regarding the denial of an exemption pursuant to Ordinance No. 912.  If the hearings officer denies the exemption, KBV can file an agency appeal in state circuit court pursuant to Haw. Rev. Stat. Chapter 91.  Defendants also reiterate that KBV has re-zoning and TAUC processes available to it.  Defendants argue that the mere fact that the Property has a General Plan resort designation and a State Land Use Commission urban district classification does not create an entitlement for KBV to develop the Property as a resort.  Defendants contend that KBV's arguments as to the effect of Section 3.19 and Ordinance No. 912 on the Property are mere conjecture at this stage.  Defendants therefore urge the Court to reserve ruling on Counts II and III until it rules upon Count I. [Id. at 18-19.]

Defendants next argue that Section 3.19 does not violate § 46-4 and that Kaiser Hawaii Kai does not apply.  In Kaiser Hawaii Kai, the Hawai`i Supreme Court struck down a zoning initiative that re-zoned two specific tracts of land.  In the instant case, Section 3.19 is not aimed at specific properties; it creates a new process for TAUs generally.  [Id. at 19-20.]

21

Defendants contend that Section 3.19 is a permissible delegation of power because it merely reallocates powers that the State granted to the County from one County subdivision to another. Thus, it was within the County's power to determine the structure and organization of its executive, legislative, and administrative offices. Kaiser Hawaii Kai does not apply because the Hawai`i Supreme Court held that § 46-4(a) does not relate to a county's executive, legislative, and administrative structure and organization. [Id. at 24-25.]

Defendants emphasize that the General Plan is a policy document that the Council adopts via ordinance. It provides guidelines for future planning actions. Defendants argue that, although the General Plan anticipated visitor growth, nothing prevents the Council from adopting slow growth policies to respond to the projections in the General Plan. In other words, Section 3.19 and Ordinance No. 912 are the manner in which the Council has responded to the growth projections in the General Plan. [Id. at 26-27.]

If this Court agrees with KBV's interpretation of Kaiser Hawaii Kai, Defendants argue that Section 3.19's severability clause controls. If this Court rules that the portion of Section 3.19 addressing the growth rate is invalid, the remainder of Section 3.19 remains in force, and KBV would be required to request TAU permits from the Council. [Id. at 27-

22

28.]

Defendants also argue that they are entitled to summary judgment because KBV failed to raise a timely challenge to the ballot question, the text of the Proposed Amended, or the Election Guide.  Further, KBV has not alleged that any fraud or misconduct prevented it from bringing a timely challenge.  [Id. at 28-29.]

As to KBV's argument that the enactment of Section 3.19 violated County Charter § 22.07, Defendants argue that § 22.07 is inapplicable because it addresses amendments to ordinances. Section 3.19 was properly enacted pursuant to the requirements in County Charter § 24.01, which addresses amendments to the County Charter.  [Id. at 29-31.]  Further, even if the requirements for the amendment of ordinances did apply, Defendants argue that the Election Guide was a fair portrayal of the Proposed Amendment. Defendants assert that the instant case is most closely analogous to Kahalekai v. Doi, 60 Haw. 324, 333, 590 P.2d 543, 550 (1979), which dealt with the ratification of a constitutional amendment. The Hawai`i Supreme Court stated that a constitutional amendment ratified by the electorate must be upheld unless the challenging party carries its burden of proving that the amendment is invalid beyond a reasonable doubt.  Further, every reasonable presumption must be made in favor of the ratified amendment.  Defendants argue that the ballot information associated with the Proposed

23

Amendment was sufficient pursuant to <u>Kahalekai</u> and similar cases outside of Hawai`i.  [<u>Id.</u> at 31-33.]  Defendants assert that the ballot question was objective, and Defendants emphasize that voters were provided with the entire text of the Proposed Amendment.  Thus, there was no danger of uncertainty or ambiguity.  Defendants argue that any allegedly misleading information in the Election Guide does not invalidate what was on the actual ballot.  [<u>Id.</u> at 34.]  Defendants emphasize that, pursuant to Haw. Admin. R. § 3-51-11(e), voter information pamphlets are not mandatory, and Defendants argue that the Election Guide was neither deceptive nor misleading.  [<u>Id.</u> at 35-38.]

        Defendants therefore urge this Court to abstain from ruling on Counts II and III but, if this Court is inclined to rule, Defendants argue that this Court should grant summary judgment on Counts II and III to Defendants.

**IV.  <u>KBV Reply</u>**

        In the KBV Reply, KBV points out that Defendants did not follow the proper procedure for filing a joint counter motion and memorandum in opposition.  KBV argues that this Court should only consider the portions of the Counter Motion addressing the KBV Motion, and this Court should strike the portions that raise different claims for relief.  They also argue that this Court should not allow Defendants to file a reply in support of the

24

Counter Motion.  [KBV Reply at 1 n.2 (citing Local Rule 7.9).]

KBV also argues that, because Defendants did not file a counter

statement of facts, this Court should deem all facts in the KBV

CSOF admitted.  [Id. at 2 n.3.]

KBV argues that the language of Section 3.19 clearly

shows that it did more than realign administrative protocol and

shift power; it exercised the County's zoning power by

establishing regulations for a newly created land use

classification.  KBV argues that only § 46-4 grants counties the

power to take such actions, and Section 3.19 is void because it

did not comply with § 46-4.  KBV also emphasizes that § 46-4 does

not address the County's executive, legislative, and

administrative structure and organization.  [Id. at 2-5.]  KBV

reiterates its argument that Section 3.19 is an invalid ballot

box regulation under Kaiser Hawaii Kai.  KBV acknowledges that

there are some factual distinctions between the instant case and

Kaiser Hawaii Kai, but KBV argues that those distinctions do not

render Kaiser Hawaii Kai inapplicable.  [Id. at 19-20.]  KBV also

argues that Defendants' severability argument is nonsensical;

deleting one sentence from Section 3.19.B. would not bring the

remainder of the amendment into compliance with § 46-4.  [Id. at

22.]

As to the Election Guide, KBV first argues that

Defendants' laches defense fails because there is no evidence

that KBV had notice of the Election Guide prior to the election. KBV reiterates that the Election Guide (and the ballot itself) was misleading because the Proposed Amendment did not implement the General Plan; it is inconsistent with the General Plan.  [Id. at 5 & n.5.]  KBV points out that Defendants did not address the Planning Department's admission that Section 3.19 is inconsistent with the General Plan.  KBV also argues that the mere fact that the full text of the Proposed Amendment was included on the ballot does not negate the misleading effect of the title, which asserted that the Proposed Amendment implemented the General Plan.  [Id. at 24-25.]

As to Defendants' arguments regarding abstention, KBV states that Defendants could have moved for summary judgment on Count I at an earlier date, but they did not do so.  KBV states that it has not moved for summary judgment on Count I because of factual issues that must be resolved at trial.  [Id. at 6.] Moreover, federal law does not require courts to rule on the merits of a federal claim before addressing pendent state law claims.  In fact, deciding pendent state law claims first is preferable if it will obviate the need to decide a constitutional question.  [Id.]

KBV asserts that Pullman abstention is not warranted because Hawai`i law, namely § 46-4 and Kaiser Hawaii Kai, is clear and, even if the Hawai`i courts have not addressed the

specific issues in this case, this Court can confidently predict how the Hawai`i courts would decide the issues based on the well-settled law.  If this Court believes there are unsettled state law issues, KBV urges this Court to certify a question to the Hawai`i Supreme Court instead of invoking <u>Pullman</u> abstention. [<u>Id.</u> at 6-7, 12.]  In addition, KBV argues that Defendants could have filed a <u>Pullman</u> abstention motion anytime after the filing of the Complaint, but they did not do so until now.  KBV asks this Court to disregard Defendants' abstention argument because they failed to raise it in a timely manner.  [<u>Id.</u> at 10.]

KBV therefore urges this Court to grant the KBV Motion.

## V.   **Counter Reply**

In their Counter Reply, Defendants first argue that their Counter Motion complies with Local Rule 7.9 because it combines their opposition to the KBV Motion with their Counter Motion, and the Counter Motion asserts a valid equitable defense to the issues in the KBV Motion.  [Counter Reply at 5-7.]

As to the abstention issue, Defendants emphasize that the matters addressed in the KBV Motion are local issues, and Defendants reiterate that abstention is appropriate.  Although they acknowledge that this Court can address the state law claims through supplemental jurisdiction, Defendants argue that this Court should decline to do so.  In the alternative, Defendants would be in favor of the certification of key issues to the

Hawai`i Supreme Court, and they suggest that the parties submit proposed questions to this Court. [Id. at 9-11.]  If this Court is not inclined either to invoke the Pullman abstention doctrine or to certify a question, Defendants argue that this Court should schedule a hearing on Count I and allow supplemental briefing, primarily on the ripeness of that claim.  Defendants urge this Court not to address the merits of Counts II and III until it rules on Count I.  [Id. at 11-14.]

As to the merits of Counts II and III, Defendants reiterate that Section 3.19 was a permissible shift of authority within the County, and they argue that Section 3.19 does not create a new land use classification.  According to Defendants, it merely narrows the scope of the permits that the Council has the authority to issue, and therefore it was a proper exercise of the County's control over its executive, legislative, and administrative structure.  [Id. at 14-16.]

Defendants contest KBV's claim that it did not have notice of the Proposed Amendment, which was a matter of public record.  Defendants argue that KBV cannot now allege any irregularities in the election process because KBV did not bring a timely challenge to the election results.  [Id. at 16-17.] Defendants next reiterate their position that the Election Guide was a fair portrayal of the Proposed Amendment, and they argue that KBV failed to prove that the Proposed Amendment was invalid

beyond a reasonable doubt.  [Id. at 17-20.]

Defendants therefore urge this Court to grant the Counter Motion and grant summary judgment in Defendants' favor as to Counts II and III.

## STANDARD

The standard for summary judgment is well-known to the parties and this Court and does not bear repeating here.  See, e.g., Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010).

## DISCUSSION

### I.   Procedural Rulings

### A.   Scope of the Counter Motion

This Court does not construe the Counter Motion as seeking any ruling as to Count I because the KBV Motion does not address Count I.  See Local Rule LR7.9 ("Any motion raising the **same subject matter as an original motion** may be filed by the responding party together with the party's opposition and may be noticed for hearing on the same date as the original motion[.]" (emphasis added)).  So construed, Defendants' Counter Motion complies with Local Rule 7.9, and Defendants properly filed the Counter Reply pursuant to Local Rule 7.9.  To the extent that KBV asks this Court to strike or disregard any portion of the Counter Motion or the Counter Reply, KBV's request is DENIED.  This Court also DENIES Defendants' request that this Court reserve ruling on

29

Counts II and III until the parties submit briefing and this
Court rules on Count I.  Even if this Court dismissed Count I
before ruling on the merits of Counts II and III, this Court
would have the discretion to exercise supplemental jurisdiction
over Counts II and III.  See, e.g., McMillan v. Boy Scouts of Am.
- Aloha Council, Civil No. 11-00430 SOM-BMK, 2012 WL 2282539, at
*11 (D. Hawai`i June 15, 2012).

    **B.**   **Defendants' CSOF**

Defendants' CSOF lists KBV CSOF number 14 as a "Non-
Material Disputed Fact".  Local Rule 56.1(g) states: "For
purposes of a motion for summary judgment, material facts set
forth in the moving party's concise statement will be deemed
admitted unless controverted by a separate concise statement of
the opposing party."  This Court finds that Defendants failed to
comply with Local Rule 56.1(g) because they did not dispute any
item in the KBV CSOF in a separate, responsive statement of
facts.  This Court therefore DEEMS the material statements of
fact set forth in the KBV CSOF to be ADMITTED.

In addition, Local Rule 56.1(h) states: "Affidavits or
declarations setting forth facts and/or authenticating exhibits,
as well as exhibits themselves, shall only be attached to the
concise statement.  Supplemental affidavits and declarations may
only be submitted with leave of court."  Defendants' CSOF does
not include any affidavits, declarations, or exhibits.  Instead,

Defendants submitted a declaration of counsel and fifteen exhibits attached to the Counter Motion.  Insofar as Defendants did not comply with Local Rule 56.1(h), this Court ordinarily would not consider Defendants' documents.  At the hearing on the KBV Motion and the Counter Motion, however, the parties confirmed that they have stipulated to the authenticity of both KBV's exhibits and Defendants' exhibits.[8]  This Court will therefore consider Defendants' exhibits in spite of Defendants' failure to comply with Local Rule 56.1(h).

## II.  __Abstention & Certification__

Before turning to the merits of Count II and Count III, this Court must address Defendants' argument that this Court should defer ruling on the merits of Count II and Count III pursuant to the __Pullman__ abstention doctrine.  This district court has described the __Pullman__ abstention doctrine as follows:

> "The __Pullman__ abstention doctrine allows a federal court to postpone the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  __VH Prop. [Corp. v. City of Rancho Palos Verdes]__, 622 F. Supp. [2d 958,] 962 [(C.D. Cal. 2009)] (quoting __Pearl Inv. Co. v. City and Cnty. of San Francisco__, 774 F.2d 1460, 1462 (9th Cir. 1985), and __C-Y Dev. Co. v. City of Redlands__, 703 F.2d 375, 377 (9th Cir. 1983)). __Pullman__ abstention is an "equitable doctrine that allows federal courts to refrain from deciding

_____

[8] In light of the parties' stipulation, this Court will not discuss the arguments in the moving papers regarding the admissibility of the exhibits.

31

sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." San Remo Hotel v. City and Cnty. of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998).  It is also a discretionary doctrine, which flows from the court's equity powers.  Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 888 (9th Cir. 2011) (citing Baggett v. Bullitt, 377 U.S. 360, 375 (1964), and Smelt v. Cnty. of Orange, 447 F.3d 673, 678 (9th Cir. 2006)[)].

   Pullman abstention is warranted if three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." Potrero Hills Landfill, 657 F.3d at 888 (quoting Spoklie v. Montana, 411 F.3d 1051, 1055 (9th Cir. 2005)).  . . .

Bridge Aina Le`a, LLC v. Haw. Land Use Comm'n, Civil No. 11-00414 SOM-BMK, 2012 WL 1109046, at *3 (D. Hawai`i Mar. 30, 2012) (some alterations in Bridge Aina Le`a).

   Count I seeks, *inter alia*, a declaration that Section 3.19 and Ordinance No. 912 are unconstitutional on their face and deprived KBV of its right to substantive due process.  [Complaint at ¶¶ 135-36.]  Count II seeks, *inter alia*, a declaration that Section 3.19 and Ordinance No. 912 are invalid on their face because they violate Haw. Rev. Stat. § 46-4, and Count III seeks, *inter alia*, a declaration that Section 3.19 and Ordinance No. 912 are invalid on their face because Section 3.19 was adopted pursuant to a process that violated Charter § 22.07.D.  [Id. at ¶¶ 150, 159.]  To the extent that all three counts seek a

declaration that Section 3.19 and Ordinance No. 912 are invalid, the second condition is met - the constitutional questions in Count I could be narrowed by a ruling on Counts II and III.

It is a close question whether the federal constitutional issues in Count I are particularly "sensitive", but, even assuming, *arguendo*, that they are sensitive issues and that the first condition is satisfied, the third condition is not satisfied.  In this Court's view, the applicable Hawai`i law, including Haw. Rev. Stat. § 46-4 and Charter § 22.07.D., that is relevant to the possibly determinative issues in Counts II and III is clear.  Although Kaiser Hawaii Kai, the seminal case relevant to Count II, presented a different factual scenario than the instant case, the legal principles set forth in Kaiser Hawaii Kai are clear, and this Court is capable of applying those principles to the facts of the instant case, where appropriate. This Court therefore CONCLUDES, in the exercise of its discretion, that Pullman abstention is not warranted in this case.

For the same reasons, this Court also declines to certify questions regarding Counts II and III to the Hawai`i Supreme Court.  See Villon v. Marriott Hotel Servs., Inc., Civil No. 08-00529 LEK-RLP, 2011 WL 4047373, at *6 (D. Hawai`i Sept. 8, 2011) ("This court may certify a question to the Hawaii Supreme Court when it concerns law of Hawaii that is determinative of the

33

cause and . . . there is no clear controlling precedent in the Hawaii judicial decisions . . . .  The court, however, should not certify questions when the answer is reasonably clear and the court can, using its best judgment, predict how the Hawai`i Supreme Court would decide the issue." (alterations in <u>Villon</u>) (citations and internal quotation marks omitted)).  This Court now turns to the merits of the KBV Motion and the Counter Motion.

### III. <u>Count II - Violation of Haw. Rev. Stat. § 46-4</u>

The Hawai`i Supreme Court has stated, "it is fundamental that authority to zone is conferred by the legislature on the counties." <u>Save Sunset Beach Coal. v. City & Cnty. of Honolulu</u>, 102 Hawai`i 465, 481, 78 P.3d 1, 17 (2003). The counties' authority to zone comes from Haw. Rev. Stat. § 46-4, which is known as the "Zoning Enabling Act". <u>See, e.g.</u>, <u>Kauai Springs, Inc. v. Planning Comm'n of Cnty. of Kauai</u>, No. 29440, 2013 WL 1829587, at *19 (Hawai`i Ct. App. Apr. 30, 2013) (citing Kaua`i County Code, Chapter 8, The Comprehensive Zoning Ordinance for the County of Kauai); <u>Kaiser Hawaii Kai Dev. Co. v. City & Cnty. of Honolulu</u>, 70 Haw. 480, 483, 777 P.2d 244, 246 (1989) ("The counties of our state derive their zoning powers from HRS § 46-4(a) . . . referred to as the Zoning Enabling Act.").  The Hawai`i Intermediate Court of Appeals has stated: "In sum, HRS § 46-4, *inter alia*, confers authority upon each county to zone, to adopt a comprehensive general plan to guide the overall future

34

development of the county, and to exercise the zoning power by ordinance." Kauai Springs, 2013 WL 1829587, at *20.

Section 46-4(a) states, in pertinent part:

**Zoning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future development of the county.** Zoning shall be one of the tools available to the county to put the general plan into effect in an orderly manner. Zoning in the counties of Hawaii, Maui, and Kauai means the establishment of districts of such number, shape, and area, and the adoption of regulations for each district to carry out the purposes of this section. In establishing or regulating the districts, full consideration shall be given to all available data as to soil classification and physical use capabilities of the land to allow and encourage the most beneficial use of the land consonant with good zoning practices. **The zoning power granted herein shall be exercised by ordinance which may relate to:**

> (1) The areas within which agriculture, forestry, industry, trade, and business may be conducted;
>
> . . . .
>
> **(4) The areas in which particular uses may be subjected to special restrictions;**
>
> **(5) The location of buildings and structures designed for specific uses and designation of uses for which buildings and structures may not be used or altered;**
>
> (6) The location, height, bulk, number of stories, and size of buildings and other structures;
>
> (7) The location of roads, schools, and recreation areas;

35

(8) Building setback lines and future street lines;

**(9) The density and distribution of population;**

. . . .

**(12) Other regulations the boards or city council find necessary and proper to permit and encourage the orderly development of land resources within their jurisdictions.**

The council of any county shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section. . . .

. . . .

The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole.  This section shall not be construed to limit or repeal any powers of any county to achieve these ends through zoning and building regulations, except insofar as forest and water reserve zones are concerned and as provided in subsections (c) and (d).

(Emphases added.)

Section 3.19 creates the TAU classification and vests the authority "to process and to issue any zoning, use, subdivision, or variance permit for more than one" TAU with the Council.  Section 3.19.A.  It also sets forth the approval process required for the development of any project with more than one TAU.  Section 3.19.B.  Thus, Section 3.19 relates to

special restrictions on particular uses of property and the location of buildings for use as TAUs.  It also states that the Council may give authority over TAU permits to the Planning Commission, if the Council enacts a growth rate ordinance. Section 3.19.C.  Thus, Section 3.19 also relates to population density and distribution.  Although the powers granted to the counties in § 46-4 are liberally construed in favor of the counties' exercise of those powers, Section 3.19 clearly relates to the counties' zoning powers granted in Haw. Rev. Stat. § 46-4.

Haw. Rev. Stat. § 46-4 requires that counties exercise their zoning powers "by ordinance".  The County, however, adopted Section 3.19 through voter initiative.  The Hawai`i Supreme Court has stated that, "[i]n view of legislative history, it is abundantly clear that the legislature in its wisdom established a public policy of not effectuating land use zoning through the initiative process." Kaiser Hawaii Kai, 70 Haw. at 483, 777 P.2d at 246; see also id. at 483 n.1, 777 P.2d at 246 n.1 (stating that, generally "'zoning by initiative', or such similar terminology, refers to amendments to both the detailed county development plans and zoning maps effected through the initiative process").  Further,

> **Zoning by initiative is inconsistent with the goal of long range comprehensive planning**, and "[i]t seems unlikely that the Legislature intended the possible frustration of comprehensive zoning through the initiative process." Smith v. Township of Livington, 106 N.J. Super. 444, 457,

37

256 A.2d 85, 92 (1969).

In <u>Township of Sparta v. Spillane</u>, 125 N.J. Super. 519, 525-526, 312 A.2d 154, 157 (1973), a New Jersey Superior Court stated:

> Zoning is intended to be accomplished in accordance with a comprehensive plan and should reflect both present and prospective needs of the community. [] Among other things, the social, economic, and physical characteristics of the community should be considered. **The achievement of these goals might well be jeopardized by piecemeal attacks on the zoning ordinances if referenda were permissible for review of any amendment. Sporadic attacks on a municipality's comprehensive plan would tend to fragment zoning without any overriding concept.** That concept should not be discarded because planning boards and governing bodies may not always have acted in the best interest of the public and may not, in every case, have demonstrated the expertise which they might be expected to develop.  (Citations omitted.)

Similarly, the Washington Supreme Court stated in <u>Leonard v. City of Bothell</u>, 87 Wash. 2d 847, 852, 557 P.2d 1306, 1309-1310 (1976) (quoting Kelley v. John, 162 Neb. 319, 323-324, 75 N.W.2d 713, 716 (1956)):

> **The uniformity required in the proper administration of a zoning ordinance could be wholly destroyed by referendum.** A single decision by the electors by referendum could well destroy the very purpose of zoning where such decision was in conflict with the general scheme fixing the uses of property in designated areas. . . .  It would permit the electors by referendum to change, delay, and defeat the real purposes of the comprehensive zoning ordinance by creating the chaotic situation such ordinance was designed to prevent.

We are cognizant that both <u>Spillane</u> and <u>Leonard</u> involved referenda.  Nevertheless, we agree with the reasoning and statements made by the respective courts as applied to the process of zoning by initiative.

<u>Kaiser Hawaii Kai</u>, 70 Haw. at 484-85, 777 P.2d at 247

(alterations in <u>Kaiser Hawaii Kai</u>) (emphases added).

The Hawai`i Supreme Court also stated:

Article VIII, section 2 of our state constitution, in pertinent part, provides:

Each political subdivision shall have the power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be provided by general law.  Such procedures, however, shall not require the approval of a charter by a legislative body.

**Charter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions,** subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions.

Section 6 of the same article further states:

**This article shall not limit the power of the legislature to enact laws of statewide concern.**

. . . .  The legislature clearly expressed concern for orderly and coordinated development within and between the counties when it adopted both the Zoning Enabling Act in 1957 and the Hawaii State Planning Act in 1978.

The City argues that although HRS § 46-4(a) authorizes the City to enact zoning ordinances, the manner in which such ordinances are enacted—by the City Council or through initiative—is a matter

39

of "legislative . . . structure and organization."
Therefore, pursuant to the state constitution,
state statutes which dictate the process by which
zoning ordinances are enacted are not superior to
charter provisions which permit initiative.  We
disagree.

The thrust of HRS § 46-4(a) is not to dictate
the manner in which zoning ordinances are
promulgated, but to assure that, however enacted,
those ordinances comport with that long-range
general plan, "and to insure the greatest benefit
for the State as a whole."  Id.  **We hold,
therefore, that HRS § 46-4(a) does not relate to
the City's "executive, legislative and
administrative structure and organization."
Consequently, the statute is superior to the
Charter's provision and, for the reason that it is
inconsistent with the purpose of HRS § 46-4(a),
zoning by initiative is impermissible.**

Id. at 488, 777 P.2d at 249-50 (some alterations in Kaiser Hawaii

Kai) (emphases added).

Defendants argue that Kaiser Hawaii Kai is inapplicable

to the instant case because the initiative in Kaiser Hawaii Kai

attempted to amend the zoning designation of a specific tract of

land from residential to preservation, and Section 3.19

established a process that applies generally, not just to one

property.  See Kaiser Hawaii Kai, 70 Haw. at 482, 777 P.2d at

246.  Defendants also argue that Kaiser Hawaii Kai is

inapplicable because Section 3.19 and Ordinance No. 912 merely

constitute a permissible shift of authority within the County's

executive, legislative, and administrative structure.

First, although the facts of <u>Kaiser Hawaii Kai</u> are distinguishable from the facts of the instant case, nothing in <u>Kaiser Hawaii Kai</u> indicates that the legal principles which the Hawai`i Supreme Court articulated in that case are limited to initiatives to change the zoning of specific tracts of land.  The legal principles in <u>Kaiser Hawaii Kai</u> are clear, and they are equally applicable to other instances in which counties attempt to legislate zoning issues through voter initiative.  This Court also rejects Defendants' argument that Section 3.19 and Ordinance No. 912 merely enacted a permissible shift of internal authority within the County.  Section 3.19 and Ordinance No. 912 created a land use classification that did not previously exist, and they established the process developers must follow in order to use their land within that classification.  Section 3.19 and Ordinance No. 912 did not merely shift authority over a classification and process that already existed.  This Court therefore CONCLUDES that Section 3.19 was an improper zoning initiative and, pursuant to <u>Kaiser Hawaii Kai</u> and Haw. Rev. Stat. § 46-4(a), Section 3.19 is invalid.

## A.  <u>Severability</u>

Defendants note that Section 3.19 contains a severability clause, section E.  <u>See</u> *supra* pg. x.  Defendants argue that, if this Court strikes the growth rate standard in section B., the delegation of authority over the TAU process to

the Council would remain in full force and effect.  [Counter Motion at 28.]  This Court, however, has not ruled that Section 3.19.B. is invalid because of the growth rate provision; this Court has ruled that Section 3.19 is invalid as a whole because it is improper zoning by initiative.  See KBV CSOF No. 15 (stating that Section 3.19 is substantively identical to the amendment that CRG proposed in its petition).  Thus, no portion of Section 3.19 survives this Court's ruling.

Defendants also argued at the hearing on the KBV Motion and the Counter Motion that, even if this Court invalidated Section 3.19 on the ground that it was improper zoning by initiative, the TAU process would survive because Ordinance No. 912 is a valid exercise of the County's zoning powers by ordinance.  This Court disagrees.  The Council enacted Ordinance No. 912 to implement Section 3.19.  See Ordinance No. 912, § 2 ("The Council further finds that it would be more efficient and appropriate if the Planning Commission were authorized by ordinance to implement Charter Section 3.19.").  Insofar as Section 3.19 is invalid, this Court also CONCLUDES that Ordinance No. 912 is also invalid.

This Court therefore GRANTS the KBV Motion as to Count II and DENIES the Counter Motion as to Count II.  This Court emphasizes that, in ruling that Section 3.19 and Ordinance No. 912 are invalid, this Court expresses no opinion as to whether

42

the TAU classification and permitting process are well thought out or whether they are in the best interests of the County and its people.  Those questions are not for this Court to decide.

## IV.  <u>Count III - Violation of County Charter § 22.07.D.</u>

Count III seeks a declaratory judgment that Section 3.19 and Ordinance No. 912 are invalid because the County failed to provide an objective summary of the Proposed Amendment in the 2008 election, in violation of County Charter § 22.07.D. Defendants argue that they are entitled to summary judgment as to Count III because: the laches doctrine bars KBV's challenge to the election materials for the Proposed Amendment; § 22.07 is inapplicable because it does not apply to Charter amendments; and the Election Guide was a fair description of the Proposed Amendment.

Section 22.07, titled "County Council Action on Petitions" states, in pertinent part:

> A.  The county council shall proceed immediately to consider an initiative or referendum petition which has been determined sufficient in accordance with the provisions of this article.  **If an initiative petition is concerned, the ordinance it proposes** shall at once be introduced subject to the procedures required for ordinances under Article IV of this charter; however, not more than sixty (60) days shall elapse between the time of first reading of the initiative proposal as a bill and completion of action to adopt, amend, or reject the same. . . .

> B.  If the council rejects an initiative amendment proposal or passes it with an amendment unacceptable to a majority of the petitioner's

43

committee, or if the council fails to repeal an ordinance reconsidered pursuant to a referendum petition, it shall submit **the originally proposed initiative ordinance or refer the reconsidered ordinance** concerned to the voters of the county at the next general election.

. . . .

D.   The ballot for such measures shall contain an objective summary of the substance of the measure and shall have below the ballot title designated spaces in which to mark a ballot FOR or AGAINST the measure.   Copies of **initiative or referendum ordinances** shall also be made available at the polls.

. . . .

(Emphases added.)   Thus, Section 22.07 clearly addresses initiatives and referenda petitions regarding County ordinances; it does not address initiatives and referenda petitions regarding the County Charter.

County Charter Article XXIV addresses Charter amendments.   Section 24.01 sets forth the process to initiate a Charter amendment,[9] and Section 24.02 addresses voting on

---

[9] The version of Section 24.01 in effect in 2008 stated:

Amendments to this charter may be initiated only in the following manner:

A.   By resolution of the council adopted after two readings on separate days and passed by a vote of five or more members of the council.

B.   By petition presented to the council, signed by not less than five percent (5%) of the voters registered in the last general election, setting forth the proposed amendments.   Such
(continued...)

44

proposed amendments.  Section 24.02, titled "Elections to be Called[,]" states:

> A.  Any resolution of the council or petition of the voters proposing amendments to the charter shall provide that the proposed amendments shall be submitted to the voters of the county at the next general election.
>
> B.  The county clerk shall have the proposed amendments published in a newspaper of general circulation in the county at least thirty (30) days prior to submission of the proposed amendments to the voters of the county at the next general election.
>
> C.  Should the majority of the voters voting thereon approve the proposed amendments to this charter, the amendments shall become effective at the time fixed in the amendment, or, if no time is fixed therein, thirty (30) days after its adoption by the voters of the county.  Any charter amendment shall be published in a newspaper of general circulation in the county within thirty (30) days of the effective date of such amendment.

Section 24.02 does not contain a requirement similar to the "objective summary" requirement in Section 22.07.  Thus, to the extent Count III alleges that Section 3.19 and Ordinance No. 912 are invalid because the County failed to comply with Charter

---

[9](...continued)
> petitions shall designate and authorize not less than three nor more than five of the signers thereto to approve any alteration or change in the form or language or any restatement of the text of the proposed amendments which may be made by the county attorney.
>
> Upon filing of such petition with the council, the county clerk shall examine it to see whether it contains a sufficient number of apparently genuine signatures of voters.

§ 22.07.D. in presenting the Proposed Amendment in the 2008 election, Count III fails as a matter of law because § 22.07.D. does not apply to initiatives proposing amendments to the County Charter.

KBV also argues that the same standard for the enactment of County ordinances proposed by initiatives should apply to County Charter amendments proposed by initiatives. [Complaint at ¶ 153 ("Voters are entitled to an accurate description of the form and content of all ballot measures."); KBV Reply at 23 ("It is absurd to suggest that the description of amendments to the 'local constitution,' require less objectivity than the description of proposed ordinances." (quoting Creighton v. City of Santa Monica, 207 Cal. Rptr. 78, 82 (Cal. Ct. App. 1984))).] In the KBV Motion, KBV argues that "[a]s a rule, a ballot question 'must neither mislead nor advocate a position, but must simply state [the] question clearly.'" [Mem. in Supp. of KBV Motion at 29 (quoting Thirty Voters of the County of Kaua`i v. Doi, 61 Haw. 179, 182-83, 599 P.2d 286, 289 (1979) (per curiam)).] Thirty Voters v. Doi, however, dealt with a ballot initiative to amend the County Comprehensive Zoning Ordinance. 61 Haw. at 180, 599 P.2d at 287-88. Further, it dealt with a specific requirement in "Section 1.07D of the initiative and referendum article of the Kauai County Charter" that stated, "[t]he ballot for such measure shall contain an objective summary

46

of the substance of the measure . . . ."  Id. at 182-83, 599 P.2d at 289.  Thus, Thirty Voters v. Doi did not announce a general rule applicable to all ballot questions, nor does it support KBV's position that the § 22.07.D. "objective summary" requirement applies to all ballot questions.  Neither KBV nor this Court has identified any case law extending Thirty Voters v. Doi to all ballot questions in general or specifically to ballot questions presenting proposed Charter amendments.

Although KBV presents a logical argument that ballot materials describing a proposed Charter amendment should contain an objective summary and should neither mislead nor advocate a position, the courts are not in a position to create such a requirement.  This Court therefore CONCLUDES that Count III fails as a matter of law.  In light of this Court's ruling, this Court need not address either Defendants' laches argument or the question of whether the voter materials describing the Proposed Amendment were misleading.  This Court DENIES the KBV Motion as to Count III and GRANTS the Counter Motion as to Count III.

## CONCLUSION

On the basis of the foregoing, KBV's Motion for Summary Judgment on Counts II and III of the Complaint, filed March 1, 2013, and Defendants' Counter Motion for Summary Judgment on Counts II and III, filed May 6, 2013, are HEREBY GRANTED IN PART AND DENIED IN PART.  The KBV Motion is GRANTED as to Count II and

DENIED as to Count III, and the Counter Motion is GRANTED as to Count III and DENIED as to Count II.

This Court expresses no opinion and makes no ruling as to Count I.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 28, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KAUAI BEACH VILLAS - PHASE II, LLC V. COUNTY OF KAUA'I, ET AL; CIVIL NO. 12-00483 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND III OF THE COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT COUNTS II AND III**